The next case today is Zeke Alexander Reyes Pujols v. Merrick B. Garland, appeal number 21-1128 and appeal number 21-1590. Attorney Horowitz, please introduce yourself for the record and proceed with your argument. Good morning, may it please the court. Ethan Horowitz on behalf of the petitioner. As the court is likely aware, the petitions that bring us here today are petitions for review of a final order of removal issued by the Executive Office for Immigration Review as to Mr. Reyes requiring his repatriation to his native Dominican Republic. There are two petitions, one seeking direct review of that final order and a second seeking collateral review pursuant to a motion for reconsideration. The substance of the petitions seek judicial review of the executive's refusal to grant Mr. Reyes a protection from removal, that is withholding of removal pursuant to Article 3 of the Convention Against Torture, and the particular challenge that Mr. Reyes brings to these petitions zeroes in on the executive's factual determination as to Mr. Reyes' credibility. Mr. Reyes submits that that factual determination was not supported by substantial evidence and merits the vacatur of the final order of removal and a remand to the court. The question before the court is why was the executive's adverse credibility determination not supported by substantial evidence and the response is that the executive branch, both the immigration court below and the Board of Immigration Appeals, ignored a critical piece of evidence that could have explained the various discrepancies on the record. It's not that the executive took that evidence into consideration and discounted it or discredited it, but the in the board simply refused to address it at all. The government points out, seems to me that you confirm that this is true, that the centerpiece of your appeal, which focuses on the claim that all of this evidence of PTSD was ignored by the IJ and the BIA, is simply not borne out by the record that there was scant attention paid to that issue. One document was admitted for a very limited purpose, you barely alluded to it in your argument before the IJ and now before us you make this again the centerpiece of the appeal and in response to that you say well that's true, we didn't really pay much attention to it, you have to understand the difficult position we were in. We were worried that if we spent too much time on it, it might be off-putting to the IJ and so that's why we didn't do it. That's a very difficult argument to make, it seems to me, to say that we were worried that this evidence would be counterproductive, we didn't pay much attention to it, but now on appeal it's the focus of your argument. What's wrong with that impression? What's going on here? I think it's incorrect, respectfully, your honor. I think the sworn declaration of nurse practitioner Wood diagnosing Mr. Reyes with PTSD was submitted into evidence, it was entered into evidence, although there was a stipulation as to Mr. Wood's testimony, there was no stipulation under the record that Exhibit 5, sub-exhibit E, which was entered into evidence, should somehow be discounted and so that was submitted with Mr. Reyes's call-up packet, was entered into evidence, and there's simply no basis to suggest that that record evidence could or should have been ignored. In addition, although perhaps this PTSD diagnosis wasn't raised fulsomely at the actual hearing, trial counsel submitted a opening argument or a pre-hearing brief which was entered into evidence as Exhibit 6 and record site 504-505 squarely with respect to the documents, with respect to the writing, this issue was squarely presented. Then, with respect to the hearing itself, I'll concede that there was no direct reference to PTSD, but Mr. Reyes and trial counsel consistently referred to Mr. Reyes's fear, his trauma, his anxiety, and so I would respectfully disagree between the entry of record evidence, Exhibit 5, and the argument contained in Exhibit 5. Let me put it this way. There's a demeanor finding by the IJ and I take it you would say that that demeanor finding is called into question by the point about the PTSD, correct? Correct, severely. Okay, but putting aside the demeanor finding, at least as I read the IJ's decision, there's then a discrepancy that the IJ identifies. Are you saying that even if those discrepancies are real discrepancies, the PTSD evidence explains that as well or not? That's a yes-no question. It will help me if you just answer it that way. I'm sorry, could you repeat the question? Yeah, the IJ has a demeanor finding and I understand your argument that the demeanor finding at least requires the IJ to grapple with it before it can simply make it, but the IJ independently goes on to identify three discrepancies which it says taken in the aggregate demonstrated a lack of complete candor and cast a shadow of unreliability. As to each of those three discrepancies, is your contention to us that even if they are in fact discrepancies, in other words, they're described accurately as discrepancies, the PTSD evidence explains that? Yes, the PTSD evidence can explain the discrepancies. If I were not persuaded that an IJ's finding of actual discrepancies can be deemed not based on substantial evidence when there is evidence of PTSD by the petitioner giving the testimony, are you making a separate argument to us that those are not discrepancies? Yes, so piece one is that those discrepancies can be explained by PTSD. I separately make an argument to us that each of those three discrepancies in fact are not discrepancies. That is correct. Mr. Reyes, could you go through each one of them and just quickly explain to me where the IJ went wrong, putting aside the PTSD evidence? Right, so the discrepancy one was Mr. Reyes' lie to U.S. Customs and Border Protection at the time of his entry. He misrepresented his identity. He testified that he did so out of fear and terror. That is quickly recanted to the asylum officer who interviewed him. That's erratic, candidly foolish behavior for normal rational people to engage in. He had no reason to misrepresent his identity and he testified that he did that because of fear and terror, this irrational panic that could have been explained by his post-traumatic stress disorder, which fear and panic attacks, etc. are typical symptoms. With respect to his memory issues, Mr. Reyes testified that he had forgotten the name of his attackers. I believe that memory inconsistency is also a very real result of post-traumatic stress disorder. You're not quite grasping my question. I'm sorry. Putting aside the PTSD explanation, are you contesting that any of the descriptions of the discrepancies are simply not accurate? That if you looked at the record, there is no discrepancy. There's a discrepancy, but one can explain it because of his trauma. Got it. I'm sorry, Your Honor. So the one discrepancy that simply doesn't exist is the one concerning the pesos and the dollars. Mr. Reyes testified that he borrowed serially $7,500 U.S. dollars against his house owner to leave the Dominican Republic. He didn't get all that money at once. Mr. Reyes also testified that he purportedly owed these Dominican National Police officers over $10,000 U.S. dollars. He testified that with interest on that $7,500 loan, he eventually would have been able to pay $10,000, but he never did. The evidence is that he never was able to repay that loan. The immigration court erred by inferring that borrowing $7,500, which then accrued later interest in excess of $10,000, was the same thing as borrowing $10,000 that he could have used to pay off his attacker. That was simply false. Both the IJ and the board got that one wrong. The immigration court also erred in determining that Mr. Reyes had taken out a mortgage on his house. I think the BIA caught that error. That was flat wrong. And then the third error was this question about Mr. Reyes' Spanish language ability, which was just speculation. It wasn't borne out in the record. It was glossed over by the board. Let me ask you one last conceptual question. The BIA, in its opinion, identifies a variety of discrepancies and does not mention demeanor evidence. It notes the error about the title that you identify with respect to the mortgage. It then says the pesos versus dollars is a wash. Maybe it was okay. Maybe it was not, but we defer to the IJ's conclusion that there was a real discrepancy there. I tell you, you're not disputing that there was a mis-account of what was said about his identity. It's true, even though you have an account of why it's explicable. The conceptual question, the legal question for me is when we have a credibility finding by the IJ, the IJ predicates it on various pieces of evidence. How do we think about the BIA's review of that for clear error? If it can identify findings in the record that provide substantial evidence for an adverse credibility finding, but the account the BIA gives that would bolster it differs from the IJ's reasons for having made it, what is the law on that? I think the law is that when an administrative fact finder at the trial court level makes a credibility determination, at least in part on demeanor evidence, if that immigration court or that administrative fact finder goes on to then have to choose between explanations offered by the government and offered by Mr. Reyes, those choices aren't severable from the demeanor determination. The BIA can't sever. The BIA is simply affirming the immigration court's choices between believing Mr. Reyes or not and I know that's your one, I guess I thought maybe you were making a slightly distinct and narrower argument, which is that demeanor is referenced, then there's a variety of discrepancies that are referenced. The BIA itself says one of those discrepancies is just wrong. Title doesn't mention demeanor, but then does mention a number of other discrepancies that had they been the only ones the IJ identified, at least it seems to me, probably would support an adverse credibility finding on substantial evidence grounds. So what are we supposed to do in reviewing the BIA? In other words, it's identified evidence in the record that could support an adverse credibility finding, but it's picked only some of the evidence that the IJ in fact relied on to support that credibility finding. What are we supposed to do on review in that situation? Yeah, I mean the BIA regulations determine that it cannot engage in independent fact finding. It's not taking a new fact, it's just taking some of the facts that the IJ found, not all of them. Right, so it's just, I mean, but the board is, let's take the example of the interactions with Customs and Border Protection. Mr. Reyes lied to CBP, that's a fact. There are two explanations for that fact. The board has to pick one, right? For it to be a discrepancy, the board needs to pick one and pick a dog in that fight, and for it to do so, it needs to affirm the IJ's decision. So I don't think the board is either making an independent factual determination that Mr. Reyes lied because he's deceitful, or it's determining that Mr. Reyes lied because he has PTSD, but you can't sever those, the board can't just, I mean, the fact doesn't exist without the context, I guess is my point. Counsel, I don't, I guess this is sort of an extension of Judge Barron's question. I mean, we often talk about, we'll point out, sometimes the BIA will explicitly adopt findings of the IJ, sometimes it will not. If they are a combined decision of the IJ and the BIA, I mean, that very analysis would suggest to me that just as the BIA can choose to adopt some findings and not others of the IJ, it can explicitly say, well, we're not going to adopt those, we're not even going to consider those. I mean, here, they specifically said, we're not even going to consider, with respect to this credibility issue, we're not even going to consider the demeanor findings that the IJ made, suggesting they're not comfortable with those, they don't want to engage in that. If they can pick and choose as to what they're going to adopt, why couldn't they, in effect, segregate and say, we're not going to consider those demeanor findings in addressing this credibility issue? You say they can't do that. You say that the IJ's credibility, that the IJ's demeanor findings tainted the entire process, that the BIA was not able to just reject those. I don't understand, as a matter of logic or authority, why the BIA, in reviewing the decision, can't say, well, we're not going to consider part of what the IJ did. Why can't they do that? I just, I don't think the board can whitewash a problematic immigration court decision. I think this court would be a lot less comfortable, for example, if the IJ had used racial epithets or misogynistic language. I don't believe that we'd be having this discussion because the court would say, well, wait a minute, there's a house of cards here built on, or there's a house here built on a rotten foundation, and we can't, you know, the board can't then whitewash the rotten foundation, pretend that it doesn't exist, and then accept all of the other factual inferences that were built upon it. You know, I think the cases I cited in reply are more extreme examples, but I think good examples of this problem, where if the immigration judge, if the immigration court has already made up its mind about the credibility of a witness based on improper inferences, I don't understand how the board can pretend that those inferences didn't impact the rest of the immigration court's decision between competing explanations. One last quick question, which you have not addressed, which seems to be critical, is the, you know, the finding that you were unable to establish that the individuals who were involved, and who inflicted all these terrible injuries on your client, that they were acting under a color of law, that they weren't just henchmen of this unless you can suggest that this torture-like conduct is that with the acquiescence of, or instigated by, government officials. How do you, how do you get around that? Are you saying that's because he could not identify these people, couldn't remember who they were, that that's explained by the PTSD? Is that your response? Well, no, your honor, Mr. Reyes clearly testified that the people who assaulted him were police officers of the Dominican National Police. He testified that they assaulted him in a police station. He testified that they brought him to the police station at least on one occasion in a police vehicle. So, I think, you know, the Board of Immigration Appeals made clear that under OFAS in 2020, that a rogue police officer is still acting under the color of law, that if the perpetrator of this violence has the authority to perpetrate this violence because he or she is clothed with the authority of the state, that that is under color of law. So, Mr. Reyes remembers who these people were, just not their names. And I think remembering that they are police officers in uniform, torturing him at a police station, I think that's more than sufficient to satisfy the under color of law standard if the immigration court had credited his testimony. All right. Thank you. I think I'm out of time. Yeah. Okay. Thank you, Attorney Horowitz. Please mute your audio and video at this time. And Attorney Shuchard, if you could unmute your audio and video and introduce yourself to begin. Good morning, your honors. I'm Spencer Shuchard for the Consolidated Petitions, in our view, are essentially open and shut. As to the petitioner's direct appeal, he concedes that any reasonable adjudicator could have found the way the immigration judge found in this case. That is the standard of review for this petition. He has conceded it on the first page of his brief. That ends the case as far as we're concerned. As to his motion to reconsider, that's a different standard. Can you go back to the first one, which strikes me as a little bit more complicated than you portray it. And here's what I'd like you to address. The IJ has a relatively extensive account of its credibility finding and the basis for it. And as I read it, it starts with a demeanor finding and it then identifies three discrepancies, which it says, well, this is not an exhaustive list of inconsistencies. The court felt that these examples, so those three, taken in the aggregate, demonstrated a lack of complete candor and cast a shadow of unreliability. This is because I found their son's testimony to be unconvincing. I evaluated the evidence in the record to see if it could be rehabilitated. To me, it's not entirely clear whether the court is including the demeanor evidence as a necessary component of the ultimate credibility finding or whether it's saying there's a demeanor problem plus three discrepancies that on their own are an independent source taken in the aggregate as the basis for the credibility finding, adverse credibility finding. Then when I turned to the BIA's decision, it purports to be upholding unclear error review, the IJ's adverse credibility finding. Yet, it doesn't endorse its demeanor component of that finding. And with respect to those three findings, which are said to be in the aggregate the basis for it, it acknowledges that one of them is factually untrue, the point about the title. It then adds to it a statement about the inability to remember the officers, which was not part of the IJ's ground for finding an adverse credibility finding. So in that setting, on what basis are we supposed to affirm the IJ's purported affirmance on clear error review of the IJ's finding when it seems to be doing it on grounds distinct from the IJ's basis for that finding? Okay, I think that the IJ's decision should not be read as just including those three particular findings as the basis for her adverse credibility finding. The standard for adverse credibility for any credibility finding for an immigration judge is a totality of the circumstances standard. So when she is talking about all of the things that she doesn't list and the things that she enumerates including demeanor, essentially all of the things that are enumerated in the corroboration statute, that's demeanor, implausibility, inconsistency, falsehood, candor. Let's just stick with the text of her opinion. Sure. Okay, she says there's an adverse credibility finding. She begins with a paragraph on demeanor. She then identifies in about four paragraphs various inconsistencies. This is her words, well this is not an exhaustive list of the inconsistencies. The court felt that these examples taken in the aggregate demonstrated the lack of future candor and cast a shadow of unreliability. Then says because I found the testimony I'm convincing, I evaluated the evidence in the record. What in the IJ's decision suggests there's some other ground that she identified as the basis for the adverse credibility finding? Why wouldn't I just go with what she told me was her ground for it? There are two reasons, your honor. I think their IJ's decision should be read in context with the law, which again is a totality of the circumstances finding. She has to make a finding about adverse credibility. So she has to explain what the basis for that finding is. She's explained it here. She started off by mentioning by holding that the credibility and that petitioner wasn't credible. She lists reasons. I mean you have to also keep in mind that IJ's are speaking extemporaneously, you know, trying to put together these decisions. Imagine that I find the text to be, of her opinion, the best source for finding out why she found it to be an adverse credibility finding. If that's so and this is the the basis, is there a ground for upholding the BIA's review of her decision if the decision is based on what she said it is just in these four corners? Or are you saying no, we can only do it if we look past the four corners of what she said? No, I'm not, I think I'm saying that. Okay, let's just stick with the four corners then. Just help me figure out, given what she said and given the BIA's explanation of why it's upholding what she found to be an adverse credibility determination, how is that permissible? I'm not saying it's not. I'm honestly asking for help in understanding how we're supposed to review a situation like that. Five minutes remaining. Thank you, Mr. Toomey. The board reviews fact findings for clear error. We understand that. I don't think you should the and this kind of goes to the petitioner's severability argument. These are the credibility findings are elemental. They have different pieces that the IJ can find. They can be based on demeanor. They can be based on inconsistencies, discrepancies, falsehoods. These all come together in aggregate and the IJ said the words aggregate where she said it in the decision but I don't think you should. I think it's a too close reading of the decision to say that it stops right because she goes on to mention other discrepancies. If I thought it is not a too close reading, it's the way you're supposed to read it. Is there a way to affirm the BIA's ruling with respect to the IJ's finding if the IJ's finding is predicated on these three examples in the aggregate? It would still be upholdable because two of the three are good and petitioner has conceded them. So what's the authority that suggests that we can affirm the BIA's ruling affirming on peer interview the IJ's ruling the IJ predicated on three findings in the aggregate one of which the BIA concedes is wrong? I don't again I don't think the decision should be read the way you're reading it to the extent. I'm just asking if it is read the way I'm reading it can you still win and what's the authority for you being able to? No, under your reading the BIA would have engaged in impermissible fact-finding. Council, the IJ perhaps anticipating the conic we were having here at one point says that this is the actual language even if the court were to have found respondent fully credible the court would nevertheless deny his applications as respondent has not yet met his burden to establish that he was persecuted on account of a protected ground then goes on to explain that alternative ground. Curiously I think the BIA itself maybe just to complicate matters doesn't seem to pick up on that alternative ground it doesn't say a word about that. I mean so just the fact that the IJ offered let's put the whole credibility issue aside there's this other basis for protecting belief and the BIA doesn't even get into that just how does that factor into what does that say? It doesn't factor the BIA noted that petitioner had not challenged the denial of his claims for asylum and withholding of removal and so the stuff about or the findings about persecution on account of those are nexus findings and level of harms those are all unexhausted at this point. So those have no relevance at all to seeking relief under the convention against torture is that the simple answer? That's correct there's no persecution finding and no nexus finding for torture that goes to the torture finding and then the acquiescence and the other things that you mentioned during my colleague's opening argument. Great. Now a lot of what the petitioner was talking about I guess I'll just address bias briefly because as I understand the petitioner's argument there's this bias that infects the decision in two different ways. One is just the mere fact of the adverse demeanor finding in that the IJ would have ignored the PTSD and the other is that it somehow infects the rest of the credibility findings through some mechanism of inferences but as you pointed out there is no there was no major mention of PTSD in the record the immigration judge took the record as the petitioner gave it to her when she confronted him with these lies he didn't say well I you know PTSD it makes me lie he says he was afraid but those lies that his fear was literally at a credible fear hearing we the petitioner's task at a credible fear hearing is to convince someone that he is afraid so the expectation that he's afraid is baked in to that whole interaction and so is the expectation that he'll tell the truth and when they do not tell the truth it is reasonable to hold those lies against them the same thing with any time he was confronted with the inconsistency about his DUI he didn't say well I you know I have PTSD so sometimes I can't remember if someone was speaking to me in gives him an opportunity to explain himself and each time he doesn't bring up the thing that he's made the central piece to his case here she didn't need inferences to make the findings that she made she's authorized to make demeanor findings and and inconsistency findings by statute she's authorized to make corroborate to require corroboration by statute she doesn't need any inference to do the things that she did I guess I'll stop there so thank you just my last point the government's not taking the position that the BIA affirmed the demeanor finding correct yeah he did not deformed it didn't mean the finding it acknowledged it and left it where it was and these and our position on that is that these things are clearly severable they are piecemeal and they can be affirmed or left alone for 50 years that's been true since the since supreme court gave us bagamas bad it's I think it's it's well settled thank you all right thank you runners thank you attorney shukart if you could mute your audio and video at this time and if attorney horowitz uh could reintroduce himself for his one minute rebuttal thank you uh ethan horowitz for the petitioner uh we agree that the totality of the circumstances is the proper standard for assessing whether or not the board and the immigration court made a proper uh adverse credibility determination and I would urge the court to look at this global record um mr reyes from the day he was tortured until the day of his immigration hearing behaved erratically he testified erratically before the immigration court his memory can you just stop once that you agree with the government that we're supposed to look at the totality of the circumstances and not what the ij said in her opinion well no I think the totality of the circumstances require the review of evidence that was not reviewed I think I think substantial evidence standard requires the review of evidence that wasn't taken into consideration so I mean if the court wishes to look to to close read uh this opinion and find that that it's uh that it wasn't properly affirmed by the board I think that's I think that's an excellent way to go because it helps my client but I think the more important not that we're not did you are are you arguing that or not maybe you're just not arguing that you're just arguing a different argument no I guess my yeah I mean my argument is is different my argument well then there's no argument of the kind that that I was talking about with the government before us yeah I mean if you're not making that argument it wouldn't be exhausting all right well yeah I I think I think that's my minute I just I just would encourage the court um that it it opened the door 15 years ago in zero v Gonzalez to take into account uh this notion that that immigration immigration court and the board of immigration appeals might err sufficiently in not taking into account a applicant's mental health status in assessing his or her credibility uh the court decided not to walk through that door at that time 15 years later we have a situation where we have record evidence that Mr. Reyes was mentally ill we have record evidence that he behaved erratically and that information was not taken into account by any of the administrative fact finders and and I think that's air under the substantial evidence and totality of the that concludes argument in this case attorney Horowitz and attorney Shukart you should disconnect from the hearing at this time